LI NEUROSCIENCE SPECIALISTS,

Plaintiff,

VERSUS

BLUE CROSS BLUE SHIELD OF FLORIDA,

Defendant.

———————————

**MEMORANDUM AND ORDER**
February 25, 2019
———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff LI Neuroscience Specialists ("plaintiff" or "LI Neuroscience") filed this action against defendant Blue Cross Blue Shield of Florida ("defendant" or "BCBS"), seeking the full amount of its billed charges for medical care provided to a beneficiary of defendant, Barton W. ("the patient"), alleging that it is entitled to recover this amount because the patient transferred all of his rights to benefit payments under his insurance plan, as well as all related rights under the Employee Retirement Income Security Act of 1974 ("ERISA"), to plaintiff.

Presently before the Court is defendant's motion to dismiss the Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the following grounds: (1) plaintiff lacks standing to pursue this claim under ERISA because the assignment of benefits was invalid; and (2) plaintiff fails to state a claim under ERISA for any relief. For the reasons set forth below, the motion to dismiss is granted.

In particular, the Court dismisses the Complaint because the Court finds that the unambiguous anti-assignment provision in the Plan document nullified any purported assignment of the patient's benefits to plaintiff and because plaintiff does not seek equitable relief such that a claim for breach of fiduciary duty under ERISA would be proper. However, because plaintiff asserted at oral argument that it is considering pursuing an alternative standing argument using a power of attorney theory, the Court will conduct a status conference to determine whether plaintiff wishes to seek leave to re-plead in light of the Court's decision.

I. BACKGROUND

A. The Complaint[1]

According to the Complaint, plaintiff provided emergency medical services to the patient on August 16, 2013, the value of which was $214,925. (Compl. ¶¶ 3-6, 8.) The patient was a beneficiary of defendant's health care plan and policies ("the Plan"). (*Id.* ¶ 2.) Plaintiff asserts that the patient transferred all of his rights under his insurance plan and all of his related rights under ERISA to plaintiff. (*Id.* ¶ 7.) Plaintiff did not attach the alleged assignment to the Complaint or its opposition papers, nor do any of plaintiff's filings specify the terms of the assignment.

As the purported assignee of the benefits, plaintiff prepared Health Insurance Claim Forms demanding reimbursement in the amount of $214,925 for the emergency medical services rendered to the patient, and defendant subsequently issued reimbursement in the amount of $12,257.90 and indicated that an additional $850.54 was the patient's coinsurance liability. (*Id.* ¶¶ 8-9.) Plaintiff then exhausted the administrative appeals process maintained by defendant. (*Id.* ¶ 10.)

Plaintiff contends that pursuant to § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), it has standing to seek relief "based on the assignment of benefits obtained by [p]laintiff from [p]atients," and that it is entitled to recover benefits due to the patient under any applicable ERISA Plan and Policy. (*Id.* ¶¶ 17, 19.) Plaintiff further asserts that defendant has failed to make payments pursuant to the Plan, and that its decision to deny additional reimbursement was wrongful. (*Id.* ¶¶ 20-21.)

Plaintiff further alleges a cause of action pursuant to ERISA § 502(a)(3), codified at 29 U.S.C. § 1132(a)(3), contending that defendant acted in a fiduciary capacity in administering any claims determined to be governed by ERISA, and breached its fiduciary duties by: (1) failing to issue an Adverse Benefits Determination; (2) participating in, or knowingly undertaking to conceal, an act or omission of such other fiduciary; (3) failing to make reasonable efforts to remedy the breach of such other fiduciary; and (4) wrongfully withholding money belonging to plaintiff. (*Id.* ¶¶ 18, 31.)

Although the Complaint does not state the basis for BCBS's authority, other than to allege that BCBS was the patient's health insurer, defendant has not challenged that that the relevant Plan is a health and welfare benefit plan under ERISA, and the patient was a Plan participant. Additionally, the Court notes that plaintiff seeks identical relief under both its breach of contract claim and its equitable relief claim.

B. The Plan

Defendant appended a copy of the relevant Plan document to its motion to dismiss, along with a declaration by its attorney declaring that the provided plan document was the pertinent benefits plan for the patient here. The relevant provision related to assignment of benefits states:

> Except as set forth in the last paragraph of this section, we will not honor any of the following

---

[1] The following facts are taken from the Complaint and are not findings of fact by the Court. Instead, the Court will assume the facts in the Complaint to be true for the purpose of the pending 12(b)(6) motion to dismiss.

assignments, or attempted assignments, by you to any Provider:

- an assignment of the benefits due to you for Covered Services under this Benefit Booklet;
- an assignment of your right to receive payments for Covered Services under this Benefits Booklet; or
- an assignment of a claim for damage resulting from a breach, or an alleged breach, of the Group Master Policy.

We specifically reserve the right to honor an assignment of benefits or payment by you to a Provider who: 1) is In-Network under your plan of coverage; 2) is a NetworkBlue Provider even if that Provider is not in the panel for your plan of coverage; 3) is a Traditional Program Provider; 4) is a BlueCard® (Out-Of-State) PPO Program Provider; or 5) is a BlueCard® (Out-of-State) Traditional Program Provider.

(Plan, ECF No. 13-3, at 38.)

### C. Procedural History

Plaintiff filed its Complaint on December 27, 2017. (ECF No. 1.) On March 7, 2018, defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 13.) Plaintiff opposed the motion on March 22, 2018, and defendant filed its reply in support of the motion on April 6, 2018. (ECF Nos. 16-17.) The Court heard oral argument on the motion on May 22, 2018. (ECF No. 20.) Defendant submitted supplemental authority on the issue of the enforceability of anti-assignment provisions on November 28, 2018 and January 14, 2019. (ECF Nos. 21-22.) Plaintiff did not respond to the supplemental submissions. To date, Barton W., the patient, has not participated in this case. The Court has fully considered all of the parties' submissions and arguments.

### II. STANDARD OF REVIEW[2]

When a court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief

---

[2] The Court notes that "statutory standing" under ERISA, which defendant challenges in its motion, is properly analyzed under the Rule 12(b)(6) standard for failure to state a claim. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("The Supreme Court has recently clarified, however, that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" (citing and quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 128 (2014))). Following the guidance of the Second Circuit in *American Psychiatric Association*, other than when referencing or quoting prior opinions which utilize that term, the Court here avoids the "statutory standing" appellation in its analysis "because the Supreme court made clear in *Lexmark* that the statutory standing appellation is misleading and a misnomer." *Id.* (internal quotations and citation omitted).

3

that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (internal citations omitted) (quoting and citing *Twombly*, 550 U.S. at 556-57).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom., Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim."); *Brodeur v. City of New York*, No. 04 Civ. 1859 (JG), 2005 U.S. Dist. LEXIS 10865, at *9-10 (E.D.N.Y. May 13, 2005) (court could consider documents within the public domain on a Rule 12(b)(6) motion to dismiss).[3]

III. DISCUSSION

Defendants argue that the Complaint fails to state a claim for which relief can be granted because: (1) plaintiff lacks a cause of action under ERISA to bring a claim under § 502 because the assignment of benefits was invalid; (2) plaintiff fails to state a claim under § 502(a)(1)(B) because plaintiff fails to identify any plan term entitling it to relief; and (3) plaintiff fails to state a claim under § 502(a)(3) because the claim is duplicative of the claim under § 502(a)(1)(B) and impermissibly seeks legal relief where Congress only authorized equitable remedies. For the reasons set forth below, the Court concludes that plaintiff does not have a cause of action to bring

---

[3] As is discussed in more detail *infra*, plaintiff's claim is based upon an ERISA plan. Therefore, the plan documents submitted by BCBS are integral to plaintiff's complaint. *See DeSilva v. North Shore-Long Island Jewish Health Sys. Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011).

4

a claim pursuant to § 502(a)(1)(B) because the unambiguous anti-assignment provision in the Plan nullified any purported assignment of benefits under the plan, including the right to bring a claim under § 502(a)(1)(B). Because the Court concludes that plaintiff does not have a cause of action to pursue a claim under § 502(a)(1)(B), the Court need not address whether plaintiff has alleged sufficient facts to state a claim under that provision. Further, the Court concludes that plaintiff's § 502(a)(3) claim impermissibly seeks legal relief in the form of money damages where Congress only authorized equitable relief, and therefore, that claim must be dismissed.

A. ERISA § 502(a)(1)(B)

1. Legal Standard

ERISA § 502(a)(1)(B) clearly provides that a civil action may be brought to recover benefits due under the terms of a plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under a plan (1) "by a participant or beneficiary" of (2) an ERISA employee benefit plan. 29 U.S.C. § 1132(a)(1)(B). It is not disputed that the Plan is an employee welfare benefit plan. *See* 29 U.S.C. § 1002(1).[4] However, the Second Circuit recognizes a narrow exception to what had been referred to as the ERISA "standing" requirement that "grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001).

In order for plaintiff to have a cause of action under ERISA based on an assignment of benefits, the purported assignment of benefits must be valid. *See Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 326 (E.D.N.Y. 2017) ("Plaintiffs' argument that they have statutory standing to sue Travelers for the alleged underpayment of benefits hinges on the validity of the purported assignment of benefits . . . ."); *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) ("In order for an assignee to prevail on an ERISA claim, however, the assignee must establish the existence of a valid assignment that comports with the terms of the welfare benefits plan.").

In *McCulloch Orthopaedic Surgical Services, PLLC v. Aetna Inc.*, the Second Circuit concluded that based on the plain language of an anti-assignment provision in an ERISA health care plan, an out-of-network healthcare provider's "acceptance of an assignment was ineffective—a legal nullity." 857 F.3d 141, 147 (2017); *see also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) ("[B]ecause we apply rules of contract law to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous. . . .") (internal quotation and citations omitted); *Farkas v. UFCW Local 2013 Health & Welfare Fund*, No. 17CV2598 (RJD)(RER), 2018 WL 5862741, at *2 (E.D.N.Y. Sept. 12, 2018) ("Unambiguous anti-assignment language renders a plaintiff's acceptance of an assignment 'ineffective—a legal nullity.'" (quoting *McCulloch*, 857 F.3d at 147)).

*McCulloch'*s conclusion regarding the ineffectiveness of assignments of ERISA plan benefits where the plan contains an

---

[4] Section 3(1) of ERISA defines an employee welfare benefit plan as "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries . . . benefits." 29 U.S.C. § 1002(1).

unambiguous anti-assignment provision is in accord with other circuits. *See Am. Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018) ("In thoughtful and reasoned decisions, every [c]ircuit to have considered [arguments against enforcing anti-assignment provisions] has rejected them, ultimately concluding that nothing in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses, among other terms."); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 352 (5th Cir. 2002); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 229 (1st Cir. 1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc.*, 49 F.3d 1460, 1465 (10th Cir. 1995); *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991).

2. Application

Defendants argue that plaintiff does not have a cause of action under § 502(a)(1)(B) because plaintiff is neither a beneficiary of nor a participant in the Plan, and because the purported assignment of benefits from the patient to plaintiff is invalid because of the unambiguous anti-assignment clause in the Plan. Plaintiff does not dispute that the Plan contains an anti-assignment provision or that the anti-assignment provision is unambiguous, but rather argues that this Court should not enforce the anti-assignment provision "as a matter of policy, fairness, and common sense." (Pl. Opp., ECF No. 16, at 2.) As this Court is bound by the precedent set by the Second Circuit, the Court concludes that the unambiguous anti-assignment provision in the Plan is enforceable, and thus plaintiff does not have a cause of action to bring an ERISA enforcement claim pursuant to § 502(a)(1)(B).

As an initial matter, the Court agrees with defendant (and plaintiff) that the language of the anti-assignment provision in the Plan is unambiguous. "We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004) (quoting *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1452 n.1 (5th Cir. 1995)); *see also Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.,* 190 F.3d 26, 33 (2d Cir. 1999) ("As a general rule, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists.") (quoting *Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 306 (2d Cir. 1987)).

Here, the language of the anti-assignment provision states as follows:

> Except as set forth in the last paragraph of this section, we will not honor any of the following assignments, or attempted assignments, by you to any Provider:
>
> - an assignment of the benefits due to you for Covered Services under this Benefit Booklet;
> - an assignment of your right to receive payments for Covered Services under this Benefits Booklet; or
> - an assignment of a claim for damage resulting from a breach, or an alleged breach, of the Group Master Policy.

6

(Plan, at 38.)  The Court concludes that, giving the anti-assignment provision its "ordinary and popular meaning," the plain meaning of the anti-assignment provision is unambiguous.  Notably, as previously discussed, plaintiff does not dispute that the provision is unambiguous.  Thus, based on the plain and unambiguous language of the anti-assignment provision in the Plan at issue here, plaintiff's "acceptance of an assignment was ineffective—a legal nullity." *McCulloch*, 857 F.3d at 146; *see LI Neuroscience Specialists (F.O.) v. Blue Cross Blue Shield of Mass.*, 17-CV-06572, 2019 WL 121673, at *2 (E.D.N.Y. Jan. 7, 2019) ("Based on the plain language of the anti-assignment provision, [p]laintiff's acceptance of an assignment was 'ineffective—a legal nullity.' Accordingly, the Court finds that [p]laintiff lacks standing to bring this ERISA action and BCBS's motion is granted.") (quoting *McCulloch*, 857 F.3d at 146); *Farkas*, 2018 WL 5862741, at * 2 ("A review of the anti-assignment clause in [d]efendant's [p]lan reveals that the language of the [p]lan is , in fact, clear and unambiguous. Thus, no valid assignment occurred . . . [a]s a result, [p]laintiff lacks standing pursuant to ERISA and his claim for payment must fail."). Accordingly, because the assignment of benefits was invalid, plaintiff does not have a cause of action pursuant to § 502(a)(1)(B).

Plaintiff argues that this Court should ignore the binding precedent of the Second Circuit and conclude that the assignment of benefits was valid despite the unambiguous anti-assignment provision in the Plan, because of public policy considerations. The primary case plaintiff cites in support of this argument is *Hermann Hospital v. MEBA Medical & Benefits Plan*, relying on the statement of that court that it would be "inequitable" to enforce the anti-assignment provision at issue in that case because the assignee of benefits was "the provider of the very services which the plan is maintained to furnish."  959 F.2d 569, 575 (5th Cir. 1992).  However, as plaintiff notes in footnote two of its opposition brief, that holding from *Hermann* was expressly limited by the Fifth Circuit in *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, in which the court stated that the two decisions in *Hermann* did not "stand[] for the proposition that all anti-assignment clauses are *per se* invalid vis-à-vis providers of health care services," and concluded that, unlike the specific anti-assignment provision at issue in *Hermann*, "[a]pplying universally recognized canons of contract interpretation to the plain wording of the instant anti-assignment clause leads inexorably to the conclusion that any purported assignment . . . would be void." 298 F.3d 348, 353 (5th Cir. 2002). Despite the Fifth Circuit's express conclusion to the contrary, and without relying on any other authority, plaintiff asserts that the *Hermann* rationale "very clearly applies to all anti-assignment clauses vis-à-vis providers of health care services." (Pl. Opp., at 2 n.2.) The Court concludes that plaintiff's position is inconsistent with the Fifth Circuit's interpretation of its own case law.

In any event, to the extent *Hermann* could somehow be read more broadly to support plaintiff's argument, it is inconsistent with the Second Circuit's decision in *McCulloch*, which is binding on this Court.  Plaintiff argues that *McCulloch* does not apply because the Second Circuit did not consider the policy arguments advanced in the instant case, and other circuits that have directly addressed policy arguments in the context of anti-assignment provisions "completely mistake the analysis."  (Pl. Opp., at 5.)  However, even assuming *arguendo* that such public policy

7

arguments were persuasive (an issue which this Court does not reach), such considerations are irrelevant when binding precedent is controlling. *See, e.g., United States v. Lenon*, 737 F. App'x. 519, 520 (11th Cir. 2018) (per curiam) ("[A]lthough Lenon asserts that this Court should not enforce sentence-appeal waivers generally for public policy reasons, that argument is foreclosed by this Court's binding precedent holding that appeal waivers will be enforced if made knowingly and voluntarily."); *Garcia v. Déjà vu Showgirls of Tampa, LC*, No. 8:16-cv-1193 T-24 TBM, 2016 WL 8939135, at *2 (M.D. Fla. Sept. 2, 2016) ("Plaintiff's public policy arguments are foreclosed by binding precedent."). Therefore, consistent with the conclusions in other post-*McCulloch* anti-assignment provision cases, the Court does not find any basis on which to distinguish *McCulloch*'s analysis of the effect of anti-assignment provisions. *See, e.g., LI Neuroscience Specialists (F.O)*, 2019 WL 121673, at *2 ("While the policy considerations cited by [p]laintiff are compelling, the Second Circuit has already reached this issue in *McCulloch* [full citation omitted]."); *Farkas*, 2018 WL 5862741, at *1 n.3 ("While [p]laintiff raises public policy arguments citing case law from other [c]ircuits, the plain language of the anti-assignment provision is ultimately controlling in this [c]ircuit.").

In sum, this Court, relying on the controlling authority of the Second Circuit, concludes that the unambiguous anti-assignment provision renders any assignment of benefits a legal nullity, and thus finds that plaintiff does not have a cause of action under ERISA § 502(a)(1)(3).

B. ERISA § 502(a)(3)

1. Legal Standard

Plaintiff argues that it is entitled to relief under ERISA § 502(a)(3), an equitable provision which allows "a participant, beneficiary, or fiduciary" to bring an action "to *enjoin any act or practice* which violates any provision of this subchapter or the terms of the plan, or . . . to *obtain other appropriate equitable relief*." 29 U.S.C. § 1132(a)(3) (emphasis added). "[S]uits may be brought under § 502(a)(3) only for "those categories of relief that were *typically* available in equity." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 582 (2d Cir. 2006) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)) (emphasis in original). "A claim for money due and owing under a contract is 'quintessentially an action at law.'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Wal–Mart Stores, Inc. v. Wells,* 213 F.3d 398, 401 (7th Cir. 2000)). "Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id*. (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-19 (1988) (Scalia, J. dissenting)). "[A] plaintiff cannot convert a claim of damages for breach of contract into an equitable claim by the facile trick of asking that the defendant be enjoined from refusing to honor its obligation to pay the plaintiff what the plaintiff is owed under the contract and appending to that request a request for payment of the amount owed." *Wal-Mart Stores*, 213 F.3d at 401; *see also Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 104

8

(2d Cir. 2005) (concluding that equitable relief was not sought and declining "to perceive equitable clothing where the requested relief is nakedly contractual").

2. Application

Plaintiff asserts a cause of action pursuant to § 502(a)(3), seeking redress for defendant's alleged breach of fiduciary duty and/or breach of co-fiduciary duty, resulting from defendant's actions in denying payment for medical bills and in the handling of the administrative appeals initiated by plaintiff. Plaintiff seeks identical relief under the § 502(a)(3) claim as under its § 502(a)(1)(B) claim, in the form of orders directing defendant to reimburse plaintiff for the alleged underpayment in the amount of $201,816.56, an order directing defendant to pay plaintiff all benefits patient would be entitled to under the Plan, and for compensatory damages, attorneys' fees and costs, and any other relief the Court deems just and equitable. Defendant argues that (1) this claim is duplicative of plaintiff's claim under § 502(a)(1)(B), and (2) does not seek equitable relief, but rather is a "re-label[ed]" claim for contractual money damages. The Court agrees that plaintiff's claim under § 502(a)(3) seeks only compensatory, monetary relief, and should be dismissed.

Though plaintiff attempts to couch its § 502(a)(3) claim in equitable terms, plaintiff does not seek equitable relief—but rather, the essence of the claim is one for damages for alleged underpayment. *See Frommert v. Conkright*, 433 F.3d 254, 270 (2d Cir. 2006) ("The relief that the plaintiffs seek . . . falls comfortably within the scope of § 502(a)(1)(B) . . . Because adequate relief is available under this provision, there is no need on the facts of this case to also allow equitable relief under § 502(a)(3).");

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13-CV-6551 TPG, 2014 WL 4058321, at *5 (S.D.N.Y. Aug. 15, 2014) (dismissing § 502(a)(3) claim because "[a]t base, plaintiffs seek damages for alleged underpayment or denial of payment.").

Here, despite purportedly seeking equitable relief, the remedy sought is clearly legal in the form of money damages, because plaintiff "seek[s] no more than compensation for loss resulting from the defendant's breach of legal duty." *Frommert*, 433 F.3d at 270 (quoting *Bowen*, 487 U.S. at 918-19). In *Frommert*, the Second Circuit affirmed the dismissal of an attempt to "expand the nature of [plaintiffs'] claim by couching it in equitable terms to allow relief under § 502(a)(3)," because "the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available." *Id.*

As in *Frommert*, plaintiff's claims here are couched in equitable terms, but the essence of plaintiff's claim in this case is one for monetary compensation, as reflected by the identical nature of the relief sought for both plaintiff's § 502(a)(3) claim and plaintiff's § 502(a)(1)(B) claim. Though plaintiff argues that it is improper to dismiss its § 502(a)(3) claim until it is determined whether plaintiff can succeed on its § 502(a)(1) claim (which the Court has already concluded it cannot, as plaintiff has no cause of action to bring the claim), or alternatively that "the monetary relief [p]laintiff seeks under [§ 502(a)(1)(B)] is by definition separate and distinct from the monetary relief sought under [§ 502(a)(3)]," the Court finds no merit to those arguments.

Plaintiff points to cases interpreting the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489 (1996), as leaving open the possibility of simultaneously pursuing a

9

§ 502(a)(1)(B) claim and a § 502(a)(3) claim at the motion to dismiss stage. *See, e.g., DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 533 (D.N.J. 2008) ("The [c]ourt is persuaded by the reasoning of those courts that have found that *Varity* does not establish a bright-line rule [regarding a plaintiff's ability to simultaneously pursue claims under § 502(a)(1)(B) claim and a § 502(a)(3)] at the motion to dismiss stage of the case."); *Tannenbaum v. UNUM Life Ins. Co. of Am.*, No. Civ.A. 03-CV-1410, 2004 WL 1084658, at *4 (E.D.Pa. Feb. 27, 2004) ("If [p]laintiff is not entitled to benefits under the Plan, Plaintiff might still be entitled to '*other appropriate equitable relief*' to remedy any breaches of fiduciary duty by Defendants.") (emphasis added). Moreover, in *Devlin v. Empire Blue Cross and Blue Shield*, the Second Circuit emphasized that "[t]he Supreme Court in *Varity Corp.* did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty; instead, the Court indicated that *equitable relief under § 502(a)(3)* would 'normally' not be appropriate." 274 F.3d 76, 89 (2d Cir. 2001) (emphasis added).

Here, the possibility of pursuing both claims simultaneously is not at issue, because the Court concludes that plaintiff is not seeking equitable relief at all, but rather seeks the balance of the billed and unreimbursed medical expenses—the exact same relief sought in plaintiff's § 502(a)(1)(B) claim. Because plaintiff seeks reimbursement for the balance of the charges for medical services provided (as well as other "classic" legal remedies such as compensatory damages), rather than any equitable remedy that could be awarded if plaintiff's § 502(a)(3) claim was successful, and plaintiff's equitable claim is clearly an effort to "repackage" its claim under § 502(a)(1)(B), the Court dismisses this claim.

C. Leave to Amend

In its opposition papers, plaintiff requested leave to re-plead if the claims were dismissed. At oral argument, plaintiff specifically noted the possibility of seeking leave to amend its Complaint to attempt to pursue a cause of action under ERISA as plaintiff's power of attorney. Because this issue was not briefed, and plaintiff did not have the Court's decision, the Court will conduct a status conference to discuss whether plaintiff will now seek leave to re-plead in light of the Court's decision.

IV. CONCLUSION

BCBS's motion to dismiss the Complaint in its entirety is granted. Plaintiff does not have a cause of action to pursue a claim under ERISA for any violation of § 502(a)(1)(B) because of the unambiguous anti-assignment provision in the Plan. Further, plaintiff's § 502(a)(3) claim against BCBS is dismissed because the relief sought is a purely legal, rather than equitable remedy. The parties shall participate in a telephone conference with the Court on Monday, March 11, 2019, at 4:30 p.m., to discuss whether plaintiff is seeking leave to file an amended complaint.



SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: February 25, 2019
Central Islip, NY

\* \* \*

Plaintiff is represented by Michael Gottlieb and Robert J. Solomon of Callagy Law, P.C., 650 From Road, Paramus, NJ, 07652. Defendant is represented by Allen P. Pegg, Zachary A. Lipshultz, and Dianne Milner of Hogan Lovells LLP, 600 Brickell Ave, Suite 2700, Miami, FL 33131 and 875 Third Avenue, New York, NY 10022.